UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DESHAUN MCCOULLUGH,

       Plaintiff,

v.                                                                              Case No. 2:08-cv-70
                                                                               HON. R. ALLAN EDGAR
GREG MCQUIGGIN, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

       Plaintiff Deshaun McCoullugh filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Warden Greg McQuiggin, Deputy Warden Linda Tribley, Acting Assistant Deputy Warden Terry Smith, Resident Unit Manager K. Meni, Assistant Resident Unit Supervisor Tommy Gajewski, Corrections Officer Unknown Jacobson, and MDOC Director Patricia Caruso.

       Plaintiff's complaint alleges that on June 26, 2007, Plaintiff was released from administrative segregation and placed in Transition Unit 5 at the Baraga Maximum Correctional Facility. Plaintiff sent Defendant Gajewski a kite informing her that he had a medical special accommodation to be placed in a tobacco free housing unit due to his asthma. In July or August of 2007, Plaintiff received a false misconduct for smoking from Officer Meyers. Plaintiff claims that this was in retaliation for complaining about the environmental tobacco smoke (ETS). Plaintiff subsequently received another retaliatory false misconduct from Officer Isaacson for smoking. Plaintiff wrote a letter of complaint to Defendant McQuiggin, informing him of the retaliatory conduct of corrections officers. On October 5, 2007, Plaintiff was moved to a tobacco free unit.

Later in October, Plaintiff received another false misconduct for smoking from Officer Turner. On October 30, 2007, Plaintiff sent a kite to Defendants Healy and McQuiggin, requesting placement in Tobacco Free Housing, citing his special medical accommodation. On November 1, 2007, Defendant Healy responded by stating that Plaintiff was already in a non-smoking unit. Plaintiff explained that because prisoners could possess tobacco, they sometimes smoked in the cells, despite the fact that it was a rule violation. Plaintiff's request to be moved was denied. On November 2, 2007, Plaintiff filed a grievance. On November 9, 2007, Defendant Tribley interviewed Plaintiff and responded that Plaintiff had been offered the chance to go to Unit 5, where he would not have to walk past smokers to go to chow, but Plaintiff refused. Plaintiff contends that placement in Unit 5 would not eliminate the ETS exposure. Plaintiff states that he "backed off the grievance" because Defendants Healy and Tribley assured him that he would be transferred to a facility with a tobacco free housing unit. On November 15, 2007, Plaintiff was sent to health services for difficulty breathing.

On December 2, 2007, Plaintiff sent a transfer request to Defendant Tribley. On December 3, 2007, Plaintiff filed a grievance on Defendants Tribley, McQuiggin and Healy for violating Plaintiff's Eighth Amendment rights. On December 5, 2007, Plaintiff was sent to Unit 5. On December 11, 2007, Plaintiff was interviewed by Defendant Meni, who referred to Plaintiff's three misconducts for smoking and indicated that Plaintiff must refrain from smoking if he wished to remain in a smoke-free unit.

On December 30, 2007, Plaintiff received a minor misconduct from Defendant Jacobson for allegedly passing two cigarettes. Defendant Jacobson told Plaintiff that he had better not write any more grievances, or he would make sure that Plaintiff lost his lawsuit. On January 17, 2008, Plaintiff was asked by Gajewski to sign a request for tobacco free housing and his cell was

then designated as tobacco free. Plaintiff complained that this designation would not stop him from being exposed to ETS because he was still in the vicinity of smokers. Plaintiff claims that his continued kites, grievances and complaints were ignored. Plaintiff states that Defendants violated his First and Eighth Amendment rights. Plaintiff is seeking compensatory and punitive damages, as well as declaratory and injunctive relief.

Presently before the Court is the Defendants' Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and/or Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately,

the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants state that Plaintiff failed to exhaust his administrative remedies with regard to his ETS claims against Defendants Caruso, Meni, Tribley and Gajewski, and his retaliation claims against Defendant Jacobson. A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). Pursuant to the applicable portion of the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[1], sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ R, X. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances

---

[1]The MDOC amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

on behalf of the MDOC director. *Id.* at ¶ II. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.*

In addition, the grievance policy provides that, where the grievance alleges staff brutality or corruption, the grievance may be submitted directly to Step III. *Id.* at ¶ S. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.*

Defendants offer the affidavit of Jim Armstrong, in which he attests that Plaintiff filed three step III grievances in 2007, only one of which addresses the alleged denial of tobacco free housing. This grievance named Defendant McQuiggin. Defendants also offer a copy of the grievance, No. AMF-07-12-0432603D. A review of this grievance reveals that Plaintiff names Defendants McQuiggin, Healy and Tribley. (Defendants' Exhibit I.) Therefore, it appears that Plaintiff exhausted his administrative remedies on his ETS claims with regard to Defendants McQuiggin, Healy and Tribley. However, Plaintiff has failed to exhaust his remedies on his ETS claim with regard to Defendants Caruso, Meni and Gajewski. Nor has Plaintiff exhausted his administrative remedies with regard to his retaliation claims. Therefore, Defendants are entitled to summary judgment on these claims.

Defendants also state that Plaintiff has failed to show that they were deliberately indifferent to a serious medical need. When prison officials ignore a prisoner's serious medical condition such as allergy or asthma relating to second-hand smoke and do not make a good-faith effort to enforce non-smoking policies or to segregate a prisoner from exposure to smoke, a prisoner may state an Eighth Amendment claim based upon exposure to environmental tobacco smoke. *See*

*Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005)(citing *Hunt v. Reynolds*, 974 F.2d 734, 726 (6th Cir. 1992)).

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment also obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). A prison official violates the Eighth Amendment when he or she is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

*Helling v. McKinney,* 509 U.S. 25 (1993), is the seminal Supreme Court case in this area. In *Helling*, a prisoner initiated a § 1983 action against prison officials claiming that his involuntary exposure to ETS from a cellmate[2] posed an unreasonable risk of serious damage to his future health in violation of the Eighth Amendment. *Helling*, 509 U.S. at 35. The Supreme Court affirmed the decision of the Court of Appeals to remand the case to the district court to allow the prisoner an opportunity to prove his case, which also required the prisoner to prove both the subjective and objective elements necessary for an Eighth Amendment violation. *Id.* Relevant to the objective element is whether the prisoner endured unreasonably high exposure to ETS that society would consider violative of contemporary standards of decency. *Id.* at 35-36. Relevant to the subjective element is whether prison officials had exhibited deliberate indifference with regard to the dangers of a prisoner's exposure to ETS. *Id.* at 36.

---

[2]The cellmate in *Helling* smoked five packs of cigarettes a day. *Helling,* 509 U.S. at 35.

Plaintiff claims that Defendants disregarded his need for tobacco free housing. Plaintiff attaches to his complaint a copy of his medical special accommodation for tobacco free housing dated November 15, 2007. Plaintiff also asserts that exposure to second hand smoke has caused permanent damage to his lungs. However, as noted by Defendants, Plaintiff has failed to provide any medical evidence supporting his claim that he suffered damage to his lungs.

In support of their motion for summary judgment, Defendants offer copies of four minor misconduct violation and hearing reports, showing that Plaintiff was caught smoking and / or possessing tobacco on four separate occasions. These reports indicate that Plaintiff received hearings on each misconduct and was found guilty by hearing officers who are not parties in this case. The misconduct tickets were written by various staff members, three of which are not defendants in this action. (Defendants' Exhibit B.) As noted by Defendants, this evidence indicates that Plaintiff's exposure to tobacco smoke was in part due to his own actions.

Defendants also offer the affidavit of Defendant Gajewski. Defendant Gajewski attests that Plaintiff kited for tobacco free housing in June of 2007, and that she reviewed Plaintiff's file to see if he had a medical accommodation. Because she did not find one, she contacted Health Care requesting the annual renewal of Plaintiff's special accommodation. Plaintiff received a copy of this renewal on November 15, 2007. Plaintiff did not sign the tobacco free housing form until January 7, 2008, by which time he had received several misconducts for smoking. Plaintiff did not need to be moved after signing the form because his cell was already designated as tobacco free. (Defendants' Exhibit D.)

In addition, Defendant Tribley attests that on November 9, 2007, Plaintiff told her that he did not smoke and needed tobacco free housing. Defendant Tribley states that she offered Plaintiff the opportunity to move to Unit 5 so he would not have to walk past smokers on the way

to chow hall, but Plaintiff stated that he preferred to remain in Unit 6. Defendant Tribley also told Plaintiff that all prisoners are prohibited from smoking inside the housing units and are subject to misconducts for violating the rules. On December 5, 2007, Defendant Tribley received a kite from Plaintiff regarding difficulties with his asthma. Defendant Tribley immediately had Plaintiff moved to Unit 5. (Defendants' Exhibit E.)

In his response to the motion for summary judgment, Plaintiff merely reasserts the allegations set forth in his complaint and contends that Defendants were aware of his medical issues and did not take proper action. However, after reviewing the record, the undersigned concludes that Plaintiff was responsible for much of his exposure to tobacco smoke, as he was caught smoking on multiple occasions. In addition, the record shows that Defendants took appropriate action to address Plaintiff's complaints about ETS. Therefore, the undersigned recommends that Defendants be granted summary judgment on Plaintiff's ETS claims.

As noted above, Plaintiff failed to exhaust his administrative remedies with regard to his retaliation claim against Defendant Jacobson. However, Defendants state that even if he had, Defendant Jacobson is entitled to summary judgment on the merits of this claim. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged

retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff claims that at the time Defendant Jacobson issued the minor misconduct ticket for passing two cigarettes, he told Plaintiff that he had better not write any more grievances, or he would make sure that Plaintiff lost his lawsuit. However, the conduct which Plaintiff was engaged in when he received the ticket was passing cigarettes, which is not protected conduct. As noted above, Plaintiff was found guilty of this behavior following a hearing. However, even assuming that Plaintiff only received the ticket because he had previously filed grievances, Defendant Jacobson had no ability to "make sure" Plaintiff lost his lawsuit. Certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *See, e.g., Thaddeus-X*, 175 F.3d at 396, 398; *Smith v. Yarrow*, No. 01-4033, 2001 WL 22400730, at *11 (6th Cir. Oct. 20, 2003). In the opinion of the undersigned, such an idle threat would not deter a person of ordinary firmness from engaging in protected conduct. Therefore, Defendant Jacobson is entitled to summary judgment on Plaintiff's retaliation claim.

Defendants Caruso, McQuiggin, Smith, and Meni assert that they were not personally involved in the alleged misconduct in this case. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert.*

*denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Caruso, McQuiggin, Smith, and Meni were personally involved in the activity which forms the basis of his claim. The only roles

that Defendants Caruso, McQuiggin, Smith, and Meni had in this action involve the denial of administrative grievances or the failure to act. Defendants Caruso, McQuiggin, Smith, and Meni cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264, 120 S. Ct. 2724 (2000). Accordingly, the Court concludes that Defendants Caruso, McQuiggin, Smith, and Meni are entitled to summary judgment for lack of personal involvement.

Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard

to sequence. *Id*. As previously discussed, because plaintiff cannot establish that his constitutional rights were violated, defendants are entitled to qualified immunity.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' Motion for Summary Judgment. Accordingly, it is recommended that Defendants' Motion for Summary Judgment (Docket #35) be granted and this case be dismissed in its entirety. Specifically, the undersigned recommends that Defendants McQuiggin, Tribley and Smith be dismissed with prejudice and Defendants Caruso, Meni, Gajewski and Jacobson be dismissed without prejudice for failure to exhaust administrative remedies. In light of this recommendation, the undersigned also recommends that Plaintiff's motion to produce documents (Docket #63) be denied as moot.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

           /s/ Timothy P. Greeley
           TIMOTHY P. GREELEY
           UNITED STATES MAGISTRATE JUDGE

Dated:   August 20, 2009